# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JOHN B. VINING,

      Petitioner,

-vs-                                        **Case No.  6:04-cv-1092-Orl-31DAB**

JAMES V. CROSBY, JR., et al.,

      Respondents.

_____

# ORDER

On February 1, 1990, a jury found John B. Vining ("Petitioner") guilty of one count of murder in the first-degree and one count of armed robbery with a firearm.  Following the penalty phase, a jury returned a recommendation of death for the murder by a vote of eleven to one.  The trial judge imposed the death penalty for the murder conviction.  Petitioner's direct appeal and requests for collateral relief were denied by the state courts.  He now seeks relief in this Court pursuant to 28 U.S.C. § 2254, claiming that his federal constitutional rights have been violated.

Petitioner asserts twelve claims for relief.  As discussed below, the petition for writ of habeas corpus relief is denied.

## I.      Background

The facts adduced at trial, as set forth by the Supreme Court of Florida, are as follows:

On December 8, 1987, surveyors discovered the partially decomposed body of a woman in a remote grassy area in Apopka, Florida.  The body was fully clothed in a two-piece dress, but no jewelry, purse or shoes were found.  Through dental records, the woman was identified as Georgia Caruso.  The medical examiner determined that death had occurred two to three weeks prior to the discovery of the body.  The medical

examination revealed a possibly fatal gunshot wound to the left side of Caruso's jaw and a fatal gunshot wound to her left temple.  There were no signs of a struggle where Caruso's body was found, and it appeared that she had been killed elsewhere and transported to the grassy area.

In November 1987, Caruso had placed advertisements in several papers offering diamonds for sale.  In response to those advertisements, a man met with Caruso at her fingernail care business, on November 13, 16, and 18, 1987.  Caruso introduced the man to Joann Ward, a nail technician employed by Caruso, as "George Williams, a man interested in jewelry I have to sell."  Ward described Williams as being in his fifties, five feet eleven inches tall, around 175 pounds, thinning light brown hair, long face, loose facial skin, and wearing a gold watch and glasses.  On November 18, 1987, Caruso asked Ward to accompany her to meet Williams in order to have the jewelry appraised.  According to Ward, Williams arrived in an older model black Cadillac Fleetwood with tinted windows, and Ward saw him use an inhaler/aspirator.  Ward and Caruso followed Williams to the Winter Park Gem Lab.  Ward ran errands while Caruso accompanied Williams to the gem lab.

Earlier in the day, Caruso had arranged for Ellen Zaffis and Kevin Donner, gemologists at the Winter Park Gem Lab, to appraise gems for a prospective buyer.  Caruso arrived at the gem lab accompanied by a man that she identified as George Williams.  Both Zaffis and Donner gave a description of Williams that was consistent with Ward's description.  Donner appraised a 6.03-carat pear-shaped diamond and a 3.5-carat round diamond at a total value of $60,000.

After the appraisal, Caruso told Ward that Williams had decided to buy the diamonds and that she was going to accompany him to the bank to put the purchase money in a safe deposit box.  Ward returned alone to work, and never saw Caruso again.  Ward and Zaffis testified that when they last saw Caruso she was wearing a two piece dress, black shoes, black earrings, a gold Rolex watch, an anniversary ring, a solitaire engagement ring, the 6-carat pear-shaped diamond ring, and was carrying a black purse.

Pursuant to the Interstate Agreement on Detainers (IAD),[] the Orange County Sheriff's Department placed a detainer against John Bruce Vining on May 5, 1989, eighteen months after Caruso's death.  At that time, Vining was serving consecutive fifteen-year sentences for kidnapping and aggravated assault in Georgia.   On June 5, 1989, the State of Florida charged Vining with the first-degree murder and armed robbery of Caruso.

The State's case against Vining was based upon circumstantial evidence.  Zaffis and Ward identified Vining's picture as George Williams when shown a photographic lineup.  At trial, Zaffis, Ward, and Donner also identified Vining as George Williams.

Phone records indicated that two calls were made from Vining's residence to a diamond dealer who advertised in the same newspaper as Caruso, but that dealer refused to meet with the caller under circumstances similar to those requested in the instant case. Vining's phone number is 774-6159 and Caruso's personal notebook listed George Williams phone number as 774-6158. Vining used his mother's black 1978 Cadillac which was discovered burning in a rock pit in Marion County the day after the media reported the discovery of Caruso's body. Phone records indicate that a call was placed to Vining's residence from a pay phone near the rock pit on the day that the car was burned. The day after Caruso disappeared, Vining sold a diamond that had been entrusted to Caruso for consignment. Vining also uses an inhaler/aspirator.

*Vining v. State*, 637 So. 2d 921, 923-24 (Fla. 1994) (citation omitted).

## II.    Prior Proceedings

In 1990, Petitioner was convicted by a jury of armed robbery and first-degree murder. The trial court sentenced Petitioner to life in prison as a habitual offender for the conviction of armed robbery and, following an eleven to one jury recommendation, sentenced him to death for the conviction of first-degree murder. Petitioner appealed his convictions and sentences. The Florida Supreme Court affirmed. *See Vining*, 637 So. 2d at 928. Petitioner filed a petition for writ of certiorari with the United States Supreme Court, which denied the petition. *See Vining v. Florida*, 513 U.S. 1022 (1994).

Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. The state postconviction court conducted an evidentiary hearing on some of Petitioner's claims, after which it denied relief. Petitioner appealed the denial. The Florida Supreme Court affirmed. *See Vining v. State*, 827 So. 2d 201, 219 (Fla. 2002).

Petitioner filed a petition for writ of habeas corpus with the Florida Supreme Court, which denied relief. *See* App. D-2.

### III.     Governing Legal Principles

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A.     Exhaustion and Procedural Default

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (I)   there is an absence of available State corrective process; or
>
>         (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir.), *cert. denied*, 525 U.S. 963 (1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id*.; *see also Henderson*, 353 F.3d at 898 n.25 ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

**B.      Standard of Review Under the AEDPA**

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable
>         application of, clearly established Federal law, as determined by the Supreme
>         Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the
>         facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings

of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v.*

*Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the

'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal

court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir.

2005), *cert. denied*, 127 S. Ct. 348 (2006).  The meaning of the clauses was discussed by the Eleventh

Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.), *cert. denied*, 534 U.S.

1046 (2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court
> arrives at a conclusion opposite to that reached by [the United States Supreme Court]
> on a question of law or if the state court decides a case differently than [the United
> States Supreme Court] has on a set of materially indistinguishable facts.  Under the
> 'unreasonable application' clause, a federal habeas court may grant the writ if the state
> court identifies the correct governing legal principle from [the United States Supreme
> Court's] decisions but unreasonably applies that principle to the facts of the prisoner's
> case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is

appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state

court's decision "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  A determination of a factual issue made by a state court,

however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### C.    Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]  *Id.* at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.), *cert. denied*, 493 U.S. 945 (1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.  Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted), *cert. denied*, 514 U.S. 1131 (1995).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

It is well established that the right to effective counsel extends to a defendant's direct appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir.), *cert. denied*, 469 U.S. 956 (1984).  The Eleventh Circuit Court of Appeals has applied the United States Supreme Court's test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987).  Thus, in order to establish ineffective assistance of appellate counsel, Petitioner must show (1) that counsel's performance was deficient and "fell below an objective standard of reasonableness" and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

**IV.    Analysis**

   **A.    Claim One - The Interstate Agreement on Detainers ("IAD")**

Petitioner asserts that the State violated the IAD by failing to bring him to trial within the statutory time limit.  In support of this claim, Petitioner argues that pursuant to the IAD, the State was required to bring him to trial within 180 days from the filing of the date of his Request for Disposition of Detainers or within 120 days of his arrival in Florida from Georgia.  Petitioner raised this claim

on direct appeal; and the Florida Supreme Court denied relief pursuant to state law. *See Vining,* 637 So. 2d at 924-25.

The IAD provides that a prisoner located in a jurisdiction, bound by the IAD, "may require the speedy disposition of charges pending against that prisoner in another participating jurisdiction when those charges provide the basis for lodging a detainer against the prisoner." *Id.* at 924 (citing § 941.45(3), Fla. Stat. (1987)). When a prisoner is in custody pursuant to the IAD, the "trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state." *Id.* at 924 (citing § 941.45(4)(c), Fla. Stat. (1987)). "If the action is not brought to trial within the time periods specified, then the court 'shall enter an order dismissing the [indictment, information, or complaint] with prejudice, and any detainer based thereon shall cease to be of any force or effect.'" *Id.* at 924 (citing § 941.45(5)(c), Fla. Stat. (1987)).

In the instant case, Respondents do not attempt to argue that Petitioner was tried within the time constraints of the IAD. Instead, Respondents maintain that the State's failure to bring Petitioner to trial within the time prescripts of the IAD did not mandate the dismissal of the indictment. In support of their argument, Respondents rely on *Reed v. Farley*, 512 U.S. 339 (1994).

In *Reed*, the United States Supreme Court considered whether a state prisoner asserting a violation of the IAD time limitation may pursue the speedy trial requirement in a federal habeas proceeding. *Reed*, 512 U.S. at 342. The Supreme Court held "that a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement." *Id.*

The record in this case reveals that Petitioner arrived in Florida on August 31, 1989.  The trial date of January 22, 1990, 144 days after his arrival, was set at Petitioner's arraignment on September 7, 1989.  *See Vining*, 637 So. 2d at 925.  Like the facts in *Reed*, there is no indication that Petitioner made any objection to the trial date when it was set nor did he ask for another trial date.  Moreover, like *Reed*, Petitioner waited until after the time expired under the IAD to file a motion to discharge the indictment.  Finally, Petitioner has failed to establish that he was prejudiced by the delay of his trial. Petitioner's trial commenced 24 days after the 120-day period expired.[2]  A delay of 24 days is a minor delay.  This is especially true given that Petitioner was not brought to Florida for prosecution until almost two years had passed from the date of the offenses.  In sum, the Court concludes that this claim is not cognizable pursuant to *Reed*.

**B.     Claim Two - Impartial Tribunal**

Petitioner contends that he was denied a fair an impartial tribunal in violation of *Gardner v. Florida*, 430 U.S. 349 (1977), because the state trial court considered extra-record information. Specifically, Petitioner asserts that the trial judge improperly considered depositions, the medical examiner's reports, and the victim's probate records; spoke with outside experts; and traveled to the crime scene.  Petitioner maintains that trial counsel was ineffective for failing to object to the trial judge's consideration of the extra-record information and to seek recusal.[3]

---

[2]The IAD also provides that the prisoner must be brought to trial within 180-days from the date that the prisoner makes a request for final disposition.  *See* Interstate Agreement on Detainers, § 2, 18 U.S.C. App. 2.  Petitioner made a request for final disposition on July 6, 1989.  If the 180-day time limitation applied in this case, Petitioner's trial would have commenced twenty days after the time limitation ran.

[3]To the extent the instant claim is based on the trial court's consideration of extra-judicial (continued...)

Petitioner raised the substantive portion of this claim on direct appeal, and the ineffective assistance of counsel claim in his Rule 3.850 motion. The Florida Supreme Court determined that the *Gardner* claim "was waived for purposes of appellate review as defense counsel never objected to the court's consideration of [the extra-record] material." *Vining*, 637 So. 2d at 927. The state court noted that defense counsel was aware of the trial judge's review of this material based on a letter filed in open court, another letter mailed to counsel before sentencing, and statements made by the trial judge during motions hearings regarding his review of depositions. *Id.* The Florida Supreme Court subsequently addressed the *Gardner* claim and the ineffective assistance of counsel claim on appeal from the denial of Petitioner's Rule 3.850 motion. *See Vining*, 827 So. 2d at 209-10. In denying the claims, the state court reasoned:

> Under *Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977), a sentencing judge who intends to use any information not presented in open court as a factual basis for a sentence must advise the defendant of what the information is and afford the defendant an opportunity to rebut it. *See also Porter v. State*, 400 So. 2d 5, 7 (Fla. 1981) (vacating death sentence where trial court relied on deposition testimony to support two aggravating factors without advising defendant of intention to use the deposition and affording defendant opportunity to rebut, contradict, or impeach the deposition testimony). However, even where a *Gardner* violation occurs, this Court may conclude that such error is harmless. *See Consalvo v. State*, 697 So. 2d 805, 818 (Fla.1996) (finding that court erred in referring to out-of-court deposition testimony, but error was harmless because court did not actually rely on any information that was not otherwise proven during trial); *Lockhart v. State*, 655 So. 2d 69, 73-74 (Fla. 1995) (finding that *Gardner* violation occurred when trial court relied on information from newspaper articles not presented in open court to support its finding of no mitigation, but that error "did not injuriously affect [the defendant's] substantial rights" and that the defendant could not claim that such information was confidential when the articles were based on interviews that the defendant gave). This Court specifically distinguished the harmless error in *Consalvo* from the reversible error in *Porter* because the *Consalvo* trial court "made reference to facts which were

---

[3](...continued)
information in relation to the hypnosis issue, this claim is discussed *infra* in claim five.

established at trial by evidence other than that referred to in the sentencing order." *Consalvo*, 697 So. 2d at 817.

In the instant case, while the sentencing order did state that the judge read all of the depositions, read the medical examiner's report, and checked the victim's probate records, all of which constitute extra-record materials, the trial judge revealed his consideration of these matters both in letters to the parties and during a motion hearing prior to the penalty phase. *See Vining*, 637 So. 2d at 927. Thus, unlike both *Gardner* and *Porter*, Vining was advised by the trial judge of his consideration of extra-record information and afforded an opportunity to rebut or impeach the information. Further, like *Consalvo*, the information relied upon in the sentencing order to support the aggravating factors was otherwise proven at trial. And like *Lockhart*, "given the overwhelming evidence supporting [the] aggravating factors, this error did not injuriously affect [the defendant's] substantial rights." *Lockhart*, 655 So. 2d at 74. Thus, it is questionable whether a *Gardner* violation occurred in this case, but even if it did, any error was harmless.

As to the subclaim that trial counsel was ineffective in failing to object or rebut the extra-record materials when brought to counsel's attention by the court, Vining fails to meet the requirements of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires a defendant claiming ineffective assistance of counsel to show both (1) that counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *See id.* at 686, 104 S. Ct. 2052. For the prejudice prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. *See id.* at 695, 104 S. Ct. 2052; *see also Valle v. State*, 705 So. 2d 1331, 1333 (Fla. 1997).

While counsel may have been deficient in failing to object to the trial judge's consideration of this extra-record information, Vining was not prejudiced by this failure, as noted in the *Gardner* analysis above. *See Consalvo; Lockhart*. Thus, Vining is not entitled to relief on his claim of ineffective assistance of counsel and we affirm the lower court's denial of this claim.

*Id.*

The Eleventh Circuit Court of Appeals has noted "that a judge's reliance, in imposing the death penalty, on information not disclosed to the defendant or his attorney violate[s] the defendant's rights to due process and freedom from cruel and unusual punishment. *Gardner* is premised on the principle that death sentences may not constitutionally be imposed on the basis of information that

-13-

the capital defendant has been afforded no opportunity to rebut." *Proffitt v. Wainwright*, 685 F.2d 1227, 1253-54 (11th Cir. 1982) (citing *Gardner*, 430 U.S. at 362). The Eleventh Circuit has applied a harmless error analysis in limited circumstances when a *Gardner* violation is found to exist. In *Delap v. Dugger*, 890 F.2d 285, 302 (11th Cir. 1989), the Eleventh Circuit found that the *Gardner* violation was harmless beyond a reasonable doubt. The appellate court noted that "[t]he trial judge's consideration of the statutory aggravating factors could not have been affected by anything the judge observed on his visit to death row, as all of the factors relate either to the crime itself or to the defendant's prior criminal record." *Delap*, 890 F.2d at 302.

In the instant case, the state postconviction court held an evidentiary hearing at which the sentencing judge testified. Based on his testimony and the sentencing order, it is clear that the trial judge reviewed depositions, the medical examiner's reports, and the victim's probate records; spoke with outside experts; and traveled to the crime scene. *See* App. C-6 at 291-331. It is also clear that none of this material was entered into evidence during the guilt or penalty phases. The trial judge testified, however, that he did not rely on the medical examiners reports in anyway nor did he rely on the victim's probate records, that someone testified at trial as to the information contained in the medical examiner reports, and that the probate records did not contain anything unknown from the trial. *Id.* at 324-26. The trial judge indicated that he did not recall relying on anything contained in the depositions that was not presented in testimony at trial. *Id* at 327-28. The trial judge admitted that he had sent letters during the proceedings to the attorneys notifying them about his contact with the medical examiner and about his efforts to obtain those reports. Thus, the Florida Supreme Court's determination that although the trial judge reviewed extra-record material, trial counsel was apprised, at least in part, of the trial court's review of the material, is supported by the record.

-14-

The state court found that four statutory aggravating factors were established: (1) the capital felony was committed by a person under sentence of imprisonment; (2) Petitioner was previously convicted of another capital felony or of a felony involving the use of threat to the person; (3) the capital felony was committed while Petitioner was engaged, or was an accomplice, in the commission of a robbery; and (4) the capital felony was committed in a cold, calculated, and premeditated ("CCP") manner.[4] Substantial evidence supporting these first three aggravators was submitted during the guilt and penalty phases of the trial. *See* App. A-14 at 1949, 1954, 1962-66, 1979-85, 1993-95, 1997-2006, 2009. Thus, like *Delap*, this Court concludes that any *Gardner* violation was harmless. For this same reason, Petitioner has not established that he was prejudiced by trial counsel's failure to object to the trial judge's review of the extra-record material or to seek recusal.[5] Accordingly, the Court finds that Petitioner has not established that the state court's determination was either contrary to, or an unreasonable application of, federal law; and this claim is denied.

---

[4]The Florida Supreme Court struck the CCP aggravator on direct appeal because it was not proven beyond a reasonable doubt. *See Vining*, 637 So. 2d at 928.

[5]Petitioner also asserts that the trial judge relied on extra-record depositions in rejecting the non-statutory mitigating factor that Petitioner was a good father. The state trial court found that there was "conflicting evidence on how good a father John Bruce Vining was." (App. A-19 at 2633.) There is no evidence, however, that the trial judge relied on extra-record material in rejecting this mitigator. The trial judge was not questioned about this mitigator at the Rule 3.850 hearing nor did he mention it. The trial court's determination that conflicting evidence existed as to whether Petitioner was a good father theoretically could have been premised on Petitioner's alcohol use or criminal history evidence, both of which were introduced during the sentencing hearing. Even Petitioner admits that he does not know whether the trial judge relied on extra-record information in rejecting the mitigator. *See* Doc. No. 20 at 26 n.7. Accordingly, the Court finds that Petitioner has not established a *Gardner* violation nor that trial counsel was ineffective for failing to object on this basis.

### C.     Claim Three - Hypnotically-Tainted Testimony

Petitioner asserts that the admission of hypnotically-tainted testimony of three of the prosecution's witnesses and trial counsel's failure to cross examine the witnesses about their hypnosis sessions violated Petitioner's right to due process and right to confront witnesses.  In support of this argument, Petitioner argues that the trial court's finding that the witnesses were not hypnotized was error.

Petitioner raised the substantive portion of this claim on direct appeal.  The Florida Supreme Court denied relief.  *See Vining*, 637 So. 2d at 926.  The state court reasoned:

> Vining's counsel filed a motion in limine to suppress photographic identifications and in-court identifications of Vining, based upon the contention that the identifying witnesses had participated in hypnotic sessions conducted by the police.  During [sic] hearing on this motion, a police officer who is a forensic hypnotist testified that witnesses Ward, Zaffis, and Donner had not been hypnotized, but had only been asked to relax and recall details from the day that Caruso disappeared.[]  The officer further testified that he asked only open-ended questions and suggested no details to the three witnesses.  Both Ward and Zaffis testified that they had not been hypnotized and were fully conscious and aware of their surroundings throughout the interview.  Both witnesses also testified that the relax and recall session did not produce any information that differed from their statements to the Winter Park Police Department and the Orange County Sheriff's Department prior to the session.  Based upon this testimony, the judge ruled that the witnesses had not been hypnotized and denied Vining's motion to suppress the witnesses' identifications.  The record in this case supports the judge's conclusion.  *See Stokes v. State*, 548 So. 2d 188, 190 (Fla. 1989) (defining hypnosis as "an altered state of awareness or perception" and finding that during hypnosis subject is placed in an artificially induced state of sleep or trance). Thus, we find no merit to this issue.

*Id.* (footnote omitted).   In his Rule 3.850 motion, Petitioner asserted that trial counsel was ineffective for failing to properly challenge the three witnesses about the "hypnosis" and failed to inform the jury that the witnesses had been hypnotized prior to identifying Petitioner as the suspect.  The  Florida Supreme Court denied the claim, finding that "trial counsel did not render

ineffective assistance on the hypnosis issue when it was determined that the witnesses had not been hypnotized and counsel ably questioned the witnesses' identifications of [Petitioner] during cross-examination." *Vining*, 827 So. 2d at 211.

The record indicates that trial counsel filed pretrial motions to exclude the identifications of Petitioner made by Ward, Zaffis, and Donner because they were allegedly hypnotized prior to identifying Petitioner. The trial court conducted a hearing on the motions at which Lieutenant Watson, Ward, and Zaffis testified. Lieutenant Watson, the officer who conducted the relax and recall sessions with the three witnesses, testified that he attempted to conduct relax and recall sessions with these witnesses and that he did not observe any evidence that they were hypnotized. (App. A-11 at 1737, 1739.) However, Lieutenant Watson indicated that he could not say whether the witnesses were hypnotized. *Id.* He testified, however, that at no time during the relax and recall sessions did he suggest to any of the witnesses anything about Petitioner or the circumstances surrounding the offense because he had no knowledge of these things. *Id.* at 1735, 1737.

Ward testified that she did not believe that she was hypnotized by Lieutenant Watson and that all he asked her to do was relax and recall what happened on November 18, 1987. *Id.* at 1745, 1749. Ward stated that she did not go to sleep during the session nor did she go into a trance-like state and she remained fully conscious during the session. *Id.* at 1745-46. She testified that Lieutenant Watson did not suggest a description of anyone or of the vehicle driven by the suspect. *Id.* at 1747. Ward stated that she had given the same information to police prior to the relax and recall session and she gave the police a statement and a description of the suspect from which a composite drawing was made. *Id.* at 1744-45, 1748. Ward admitted that she had stated during

her deposition that she was hypnotized; however, she used the word hypnosis as a term of art because she associated it with relaxation. *Id.* at 1752, 1758.

Zaffis testified that prior to the relax and recall session she gave statements to the police and helped make a composite. *Id.* at 1764. She further testified that she was not hypnotized by Lieutenant Watson, that she was aware of her surroundings and everything she was saying during the session, and that she was not in a state of sleep or trance. *Id.* at 1765-66. Zaffis stated that Lieutenant Watson did not make any suggestions about the description of the suspect or the vehicle driven by the suspect. *Id.* at 1767. Finally, she indicated that she did not give the police any different information after the session than she had given previously. *Id.* at 1767-68.

After the witnesses testified, the trial judge noted that the Florida Supreme Court defined hypnosis as an altered state of awareness or perception during which the subject is placed in an artificially induced state of sleep or trance. *Id.* at 1781. The trial judge noted that the witnesses indicated that they were not asleep or in a trance during the sessions and opined that based on the Florida Supreme Court's definition it did not appear that they were hypnotized. *Id.* The trial court then denied the motions to suppress Ward and Zaffis' identifications. *Id.* at 1783.

During the trial, the prosecution proffered Donner's testimony and the trial court conducted a hearing to determine whether Donner was hypnotized. (App. A-6 at 1115.) Donner testified that he was not hypnotized by Lieutenant Watson, he was one hundred percent aware of what was happening during the session, and he was never in a sleep-like trance. *Id.* at 1117. The trial court discussed his prior experience and his understanding of hypnosis and then denied the motion to suppress Donner's identification based on *Stokes*. *Id.* at 1135-41.

-18-

The Florida Supreme Court affirmed the trial court's denial of the motions to suppress these witnesses' identifications, thereby agreeing with the trial court's application of *Stokes*. Thus, the state courts made a factual determination based on the evidence presented that these witnesses were not hypnotized.[6] Petitioner has not established that the state court's decision is contrary to clearly established federal law. Accordingly, the substantive portion of this claim is denied.

With respect to the ineffective assistance of counsel portion of this claim, Petitioner has failed to establish that the state courts' determination is contrary to, or an unreasonable application of, federal law. The trial court determined that the witnesses were not hypnotized; therefore, counsel cannot be deemed deficient for failing to cross-examine the witnesses on their "hypnotization." Moreover, trial counsel thoroughly cross-examined the witnesses regarding their identification of Petitioner. *See* App. A-6 at 1045-52, 1092-97; App. A-7 at 1157-60. The record supports the state courts' determination. Accordingly, this claim is denied pursuant to § 2254(d).

### D.      Claim Four - Withheld Exculpatory Evidence

Petitioner asserts that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that would have impeached the State's key witnesses. Specifically, Petitioner asserts that the State withheld (1) police notes from Ward's statement concerning the jewelry the

---

[6]To the extent that Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to the trial judge's use of extra-judicial material concerning hypnosis, the Court notes that on direct appeal the Florida Supreme Court considered whether Zaffis, Ward, and Donner were hypnotized based on the record from the hearing on the motion to suppress. *See Vining*, 637 So. 2d at 926. The Florida Supreme Court ruled that "[t]he record . . . supports the judge's conclusion" that the witnesses were not hypnotized as defined in *Stokes*. *Id.* Thus, the Florida Supreme Court made a finding from the record that the witnesses were not hypnotized pursuant to state law. Accordingly, Petitioner has not established that he was prejudiced by counsel's failure to object to the trial court's consideration of extra-judicial material related to hypnosis.

-19-

victim was carrying and the time of the day the victim disappeared; (2) police notes concerning

Donner's observation of the suspect; (3)  police notes from December 17, 1987, in which Ward,

Zaffis, and Donner gave descriptions of the suspect; (4) an FBI analysis of a fiber found on the

victim's blouse; (5) a complete copy of the victim's notebook; and (6) police notes from an

interview of Donner by Captain Hunter of the Winter Park Police Department.  Petitioner raised

this claim in his Rule 3.850 motion, and the state courts denied relief.

To prevail on a claim brought under *Brady v. Maryland*, 373 U.S. 83 (1963), Petitioner

must demonstrate the following:

> (1) that the Government possessed evidence favorable to the defendant (including
> impeachment evidence); (2) that the defendant does not possess the evidence nor
> could he obtain it himself with any reasonable diligence; (3) that the prosecution
> suppressed the favorable evidence; and (4) that had the evidence been disclosed to
> the defense, a reasonable probability exists that the outcome of the proceedings
> would have been different.

*United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir.), *cert. denied*, 493 U.S. 932 (1989).  As

the United States Supreme Court has decreed, "evidence is 'material' under *Brady*, and the failure

to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability'

that had the evidence been disclosed the result at trial would have been different."  *Wood v.*

*Bartholomew*, 516 U.S. 1, 5 (1995).  "The mere possibility that an item of undisclosed information

might have helped the defense, or might have affected the outcome of the trial, does not establish

'materiality' in the constitutional sense."  *United States v. Agurs*, 427 U.S. 97, 109-110 (1976).

Further, "*Brady* does not require the government to turn over information which, with any

reasonable diligence, the defendant can obtain himself."  *Jarrell v. Balkcom*, 735 F.2d 1242, 1258

(11th Cir. 1984), *cert. denied*, 471 U.S. 1103 (1985) (quotation omitted).

1.      *Police Notes from Ward's Statement Concerning the Jewelry the Victim was Carrying and the Time of Day the Victim Disappeared*

Petitioner asserts that the State failed to provide the defense with police notes from an interview with Joann Ward in which she indicated that the victim did not have any loose stones with her on the day she disappeared, which contradicted her trial testimony. Petitioner further contends that the State failed to give the defense police notes indicating that Ward also told police that the victim got into the suspect's vehicle at around 9:00 a.m. on November 18, 1987, the day she disappeared, which was also inconsistent with her trial testimony.

Petitioner raised this claim in his Rule 3.850 motion. After a hearing on the claim, the state postconviction court denied relief, applying the law set forth in *Brady*. *See* App. C-17 at 2487-88. With respect to the police notes concerning the loose stones, the state court determined:

> Even if Ward's testimony on this issue had been severely impeached or excluded entirely, other evidence in the record provides strong support for the conclusion that the "motive diamond" was in the victim's possession on the day she disappeared. First, witness Donner testified that although he didn't appraise it, the victim had a one carat round diamond about which she asked a question. (R. 1155). Second, witness Piantieri specifically described a rare diamond which she had purchased and given to witness Ryan to sell. (R. 1208-11). Witness Ryan testified that he gave this diamond, a loose stone, to the victim on the day before she disappeared. (R. 1219). Further, witness Jones testified that a man identified as Defendant sold this stone to him the day after the victim disappeared. (R. 1222-26). In light of the above testimony of these four witnesses, the impeachment value of Ward's statement was minimal, and Defendant cannot prove materiality as to this piece of evidence.

(App. C-17 at 2487.)    The Florida Supreme Court affirmed. *See Vining*, 827 So. 2d at 208-09.

As to the police notes concerning the time the victim left with the suspect, the state postconviction court denied relief based on *Brady*. The state court reasoned:

> At the evidentiary hearing, Detective Gay testified that his notes included a question mark which indicated that Ward was not sure of the time and was not sure

> if the victim had gotten into the suspect's car. Detective Gay also testified that this
> was not a sworn statement, but merely notes he made to remind him of facts about
> which to question the witness later.  At trial, Ward testified that "early in the
> morning" of November 18, 1987, the suspect entered the shop and he and the
> victim "walked out of the shop." (R. 1016-17).  Her testimony also indicated that
> she was not sure of the details of that encounter.  Hence, the undisclosed notes
> were not truly inconsistent with the witnesses's trial testimony.  Accordingly, the
> Court finds that any possible impeachment value was minimal, and no prejudice
> ensued from nondisclosure of this evidence.

(App. C-17 at 2488.)  The Florida Supreme Court affirmed.  *See Vining,* 827 So. 2d at 208-09.

At the evidentiary hearing, trial counsel admitted that the defense received other statements

from Ward describing the jewelry that the victim had with her on November 18, 1987, none of

which included loose stones.  *See* App. C-5 at 252-54, 256-58; App. C-6 at 372-78.  Thus, these

statements could have been used by defense counsel to impeach Ward's trial testimony that the

victim had loose stones on the day she was last seen.  Furthermore, as noted by the state courts,

Ryan testified that he had given the victim a 1.13 carat diamond, which was loose, for consignment

on November 17, 1987, and Donner testified that on November 18, 1987, the victim asked him a

question about a one carat diamond.  (App. A-7 at 1155, 1219.)  Donner further testified that the

victim brought in "a couple of diamonds to have them appraised."  *Id.* at 1153.

As to the police notes concerning the time Ward saw the victim and the suspect on

November 18, 1987, Detective Gay testified that his notes indicated that Ward was not certain

about the time that the victim got into the suspect's car.  *See* App. C-6 at 488.  At trial, Ward

testified that the suspect came to the victim's shop early in the morning and she did not remember

if the victim and the suspect met at that time.  *See* App. A-6 at 1016-17.

Based on the foregoing, the Court finds that Petitioner possessed information that Ward

did not indicate that the victim had loose stones, and the notes regarding the loose stones were not

material pursuant to *Brady* because there is no reasonable probability that had the notes been disclosed the result at trial would have been different.  Moreover, the notes regarding when Ward saw the victim and the suspect on November 18, 1987, were not inconsistent with her trial testimony.  Accordingly, the Court concludes that Petitioner has not established that the state court's determinations are either contrary to, or an unreasonable application of, federal law.

      2.      *Police Notes Concerning Donner's Observation of the Suspect*

Petitioner asserts that the State failed to disclose police notes which indicated that Donner was not paying attention to the victim and the suspect when he was appraising the victim's diamonds.  Petitioner contends that these notes establish that Donner's identification of Petitioner as the suspect was faulty because of his inattention.

Petitioner raised this claim in his Rule 3.850 motion.  Applying *Brady*, the state postconviction court denied relief.  *See* App. C-17 at 2488-89.  The state court reasoned that the defense had this evidence prior to trial based on the deposition of Detective Nazarchuck, wherein he stated that Donner indicated that he was not paying too much attention to the victim and the suspect because he was in the back appraising the diamonds.  *Id.*  The Florida Supreme Court affirmed.  *See Vining*, 827 So. 2d at 208-09.

Petitioner has not established that the state court's conclusion is either contrary to, or an unreasonable application, of federal law.  Prior to trial Detective Nazarchuck informed the defense that Donner stated that he was not paying attention to the victim and the suspect.  *See* App. A-24 at 3535.  Moreover, trial counsel cross-examined Donner on his observation of the suspect and brought out that Donner spent the majority of his time appraising the diamonds.  *See* App. A-7 at 1158-59.  Thus, Petitioner had this evidence, and this *Brady* claim is denied pursuant to § 2254(d).

3.    *Police Notes from December 17, 1987, in which Ward, Zaffis, and Donner Gave Descriptions of the Suspect*

Petitioner argues that the State failed to disclose police notes from December 17, 1987, in which Ward, Zaffis, and Donner gave descriptions of the man seen with the victim. Petitioner contends that these notes impeached the identifications that these witnesses made after their relax and recall sessions.

Petitioner raised this claim in his Rule 3.850 motion, and the state postconviction court denied relief. *See* App. C-17 at 2490. The state court found that Petitioner failed to "show what inconsistencies appeared in these notes or how these notes could have been used to impeach the witnesses' trial testimony." *Id.* The state court concluded that "any possible impeachment value is speculative, and no prejudice ensued from nondisclosure of this alleged evidence." *Id.* The Florida Supreme Court affirmed. *See Vining,* 827 So. 2d at 208-09.

Petitioner has failed to establish that the state court's ruling is either contrary to, or an unreasonable application of, federal law. The Court agrees that Petitioner has not alleged any inconsistencies between these notes and the trial testimony nor has the Court found any inconsistencies. Vague and conclusory claims failing to state facts which would demonstrate an entitlement to relief can be dismissed without further consideration. *Blackledge v. Allison*, 431 U.S. 63, 75 (1977). Accordingly, this claim is denied pursuant to § 2254(d).

4.    *FBI Analysis of a Fiber Found on the Victim's Blouse*

Petitioner asserts that the State failed to disclose an FBI analysis of a fiber found on the victim's blouse, which showed that the fiber did not match any hair or fiber from Petitioner. Petitioner raised this claim in his Rule 3.850, and the state postconviction court denied relief. *See*

App. C-17 at 2489-90.  The Florida Supreme Court affirmed.  *See Vining,* 827 So. 2d at 208-09.

Applying *Brady*, the state postconviction court noted that the report only stated that "the first fiber, from the victim, is a polyester fiber, the source of which 'is not known to the Laboratory.'"  *See* App. C-17 at 2489-90.   The state court further noted that the evidence established that the victim's body was exposed to the elements for at least two weeks, and no one knew from where the polyester fiber came.  *Id.*  The state court concluded that the FBI analysis only indicated that the polyester fiber was dissimilar to the carpet fiber taken from Petitioner's car; and therefore, the exculpatory value of the evidence was limited.  *Id.*  The state court further reasoned that other evidence in the record provided strong support for the conclusion that Petitioner would have been convicted even if the FBI analysis had been disclosed.  *Id.*  The evidence included Ward's description of the suspect and his vehicle and the testimony of Piantieri, Ryan, and Jones concerning the 1.13 carat diamond and the victim's and Petitioner's possession of the diamond.  *Id.*  The state court concluded that Petitioner had not shown that there was a reasonable probability that his convictions or sentences would have been different if the FBI analysis had been disclosed.  *Id.*

Petitioner has not established that the state court's determination is either contrary to, or an unreasonable application of, federal law.  The evidence adduced at trial included eyewitness identifications of Petitioner and testimony that after the day after the victim's disappearance Petitioner possessed and sold the 1.13 carat diamond held by the victim for consignment.  *See* App. A-7 at 1218-35.  The Court concludes that Petitioner has not shown that had the FBI analysis been

-25-

disclosed a reasonable probability exists that the result at trial would have been different. Accordingly, this claim is denied pursuant to § 2254(d).[7]

     5.     *Complete Copy of the Victim's Notebook*

Petitioner contends that prior to trial the State failed to provide the defense with a copy of the victim's notebook in which she recorded her jewelry sales and contacts. Petitioner raised this claim in his Rule 3.850 motion, and the state postconviction court denied relief. *See* App. C-17 at 2491.

In denying the claim, the state court noted that the notebook was introduced into evidence during the trial, and defense counsel only objected to its admission as cumulative. *Id.* The state court also found that Petitioner "failed to show what portions [of the notebook] were exculpatory or impeaching[,]" thereby concluding that Petitioner had not established a *Brady* violation. *Id.* The Florida Supreme Court affirmed. *See Vining,* 827 So. 2d at 208-09.

Petitioner has failed to demonstrate that the state court's determination is either contrary to, or an unreasonable application of, federal law. Petitioner has not alleged in the instant habeas petition what statements contained in the notebook are exculpatory or impeachment material. Accordingly, this claim is denied pursuant to § 2254(d).

---

[7]The Court further notes that it appears from the record that the FBI analysis was provided to the defense or that the defense was aware of the polyester fiber. *See* App. A-17 at 2225 (letter to the prosecution from defense counsel dated October 3, 1989, indicating that FBI laboratory analysis was received); App. A-25 at 3664-65 (deposition of Detective Nazarchuck wherein he indicates that FBI lab report indicated that no determination could be made on fiber from victim's clothes).

6.      *Police Notes from an Interview of Donner by Captain Hunter of the Winter Park Police Department*

Petitioner asserts that the State failed to disclose police notes from an interview of Donner by Captain Hunter of the Winter Park Police Department.  Petitioner raised this claim in his Rule 3.850 motion, and the state postconviction court denied relief.  *See* App. C-17 at 2490.  The appellate court affirmed.  *See Vining,* 827 So. 2d at 208-09.

In denying relief, the state postconviction court found that Petitioner did not allege or argue at the 3.850 "evidentiary hearing that there were inconsistencies between Donner's statements to Captain Hunter, his deposition testimony and his trial testimony." (App. C-17 at 2490.)  The court further noted that Petitioner failed to offer the police notes into evidence at the hearing and concluded that the claim was speculative and that no prejudice resulted from the nondisclosure of the alleged evidence.  *Id*.

Petitioner has not established that the state court's ruling was either contrary to, or an unreasonable application of, federal law.  As noted previously, the United States Supreme Court has held that vague and conclusory claims failing to state facts which would demonstrate an entitlement to relief can be dismissed without further consideration.  *Blackledge*, 431 U.S. at 75. Accordingly, this claim is denied pursuant to § 2254(d).

**E.      Claim Five - Motive Diamond and Ineffective Assistance of Guilt Phase Counsel**

Petitioner asserts that he was denied a full and fair hearing in the state court when he was denied leave to examine the "motive diamond" and was denied a hearing on his claims of ineffective assistance of counsel during the guilt phase and on newly discovered evidence.  In support of this claim, Petitioner contends that experts could testify that in order to determine that

the "motive diamond" identified at trial was the same one the victim had, the diamond would have to have been plotted and the plot used for a comparison.  Petitioner further argues that the expert witness could have proved that when a lower quality diamond is cut, the diamond's appearance is altered.  Additionally, Petitioner maintains that another expert witness could have testified that the motive diamond could not be identified two years after the offense because such an identification could only be accurate if the diamond contained a dramatic flaw that would classify the diamond as lower quality than the motive diamond.

Petitioner further argues that the state postconviction court improperly denied his request for an evidentiary hearing on his claim of ineffective assistance of counsel during the guilt phase.[8] Specifically, Petitioner maintains that a hearing should have been conducted regarding trial counsel's failure to challenge the testimony of Donner and Ward concerning their identifications of Petitioner.[9]  Petitioner maintains that trial counsel failed to impeach Ward with Detective England's deposition testimony and Donner with his own deposition testimony.  Next, Petitioner contends that trial counsel failed to object to the trial court's use of extra-record material to rule

---

[8]The Court notes that it is difficult to ascertain exactly which claims of ineffective assistance of counsel during the guilt phase Petitioner is referencing.  References are made to the Rule 3.850 motion; however, they are not entirely clear.  Therefore, the Court will address only those claims specifically discussed in Petitioner's memorandum in support of claim five.

[9]To the extent Petitioner is asserting that trial counsel was ineffective for failing to cross-examine Zaffis, Ward, and Donner regarding their "hypnotization," this claim was addressed *supra* in claim three.

on the motion to suppress hypnotically-induced identifications.  Finally, Petitioner asserts that trial counsel failed to present expert testimony regarding the subject of the relax and recall testimony.[10]

Petitioner raised these claims in his Rule 3.850 motion.  The state postconviction court denied relief on Petitioner's claim of newly discovered evidence regarding the motive diamond and the claim of ineffective assistance of counsel for failing to have the diamond mapped.  *See* App. C-17 at 2484-85.  Relying on state law, the state court determined that the evidence the potential expert witnesses could have offered regarding the identification of the diamond did not constitute newly discovered evidence because trial counsel knew of these witnesses at the time of trial.  *Id.* (stating that "[n]ewly discovered evidence 'must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence.'").  The state court, therefore, denied the claim.  *Id.*

The state court further determined that defense counsel was not ineffective regarding the identification of the diamond.  *Id.* at 2485.  The state court reasoned that the evidence introduced at trial included the testimony of John Slade, Elizabeth Slade-Piantieri, and Kevin Dudley, all of whom positively identified the recovered diamond as the diamond the victim had in her possession. *Id.*  The state court further found that the jury heard testimony from Mark Ryan, Gregory Jones, and James Blanck, which placed doubt about the identification of the diamond, and defense counsel "aptly cross-examined" all of these witnesses.  *Id.*  The state court concluded that Petitioner failed to show that counsel's performance was deficient or that he was prejudiced

---

[10]Petitioner does not specify when trial counsel should have called an expert witness to testify about the relax and recall testimony.  The Court assumes that Petitioner is asserting that trial counsel should have called an expert to testify at the hearing on the motion to suppress.

because even if Petitioner "had brought an independent diamond expert to examine the diamond," no reasonable probability was established that the outcome of the proceedings would have been different. *Id.* at 2485-86.

With respect to the newly discovered evidence portion of the claim, Petitioner has not established that the state courts' determination is either contrary to, or an unreasonable application of, federal law. The state court applied state law in determining that the evidence was not newly discovered. Petitioner has not demonstrated that this ruling is erroneous such that relief is warranted pursuant to § 2254(d).

With respect to the ineffective assistance of counsel portion of the diamond identification claim, the Court again concludes that Petitioner has not established that the state court's determination was either contrary to, or an unreasonable application of, federal law. The record reflects that at trial John Slade and Elizabeth Slade-Piantieri unequivocally testified that the recovered diamond sold by Petitioner the day after the victim's disappearance was the same diamond that the victim had on November 18, 1987. *See* App. A-7 at 1194-99, 1208-15. These witnesses based their determination on the characteristics of the diamond, including the inclusion in the diamond and the color of the diamond. *Id.* Gregory Daniel Jones, a jeweler who testified that a John B. Vining sold him the recovered diamond, admitted on cross-examination that he would not be able to identify the recovered diamond. *Id.* at 1231. Moreover, on cross-examination, defense counsel elicited that the diamond had not been plotted, thereby there was no map of the diamond for use in identification. *See* App. A-6 at 1095; App. A-7 at 1200-01, 1215.

In addition to the foregoing, the Court notes that Petitioner failed to provide any evidence substantiating what testimony these expert witnesses either could or would have offered. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *Daniels v. McDonough*,  2006 WL 2620143, at *10 (M.D. Fla. 2006) (quoting *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)). As such, "to successfully assert that trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony*."  Daniels*, 2006 WL 2620143, at *10 (citing *United States v. Schaflander*, 743 F.2d 714, 721 (9th Cir. 1984)).  Evidence sufficient to meet this showing includes sworn affidavits from the potential witnesses stating what testimony they would have provided. *Daniels*, 2006 WL 2620143, at *10.  "In the absence of the necessary factual showing, Petitioner's mere conclusory allegations are insufficient to warrant finding that trial counsel was ineffective for failing to call these witnesses to testify." *Id.* (citation omitted).  Thus, Petitioner's conclusory allegations do not support a finding of ineffective assistance of counsel, and the state court's determination is neither contrary to, nor an unreasonable application of, federal law.  This claim, therefore, is denied.

With respect to Petitioner's claims of ineffective assistance of counsel during the guilt phase, the Court will consider each allegation in turn.[11]  First, Petitioner asserts that counsel failed

---

[11]The Court notes that Petitioner raised these claims in his Rule 3.850 motion in claim four. *See* App. C-13 at 1635-37, 1640.  The state postconviction court denied relief, concluding that these claims were procedurally barred.  *See* App. C-17 at 2484.  It does not appear that Respondents assert

(continued...)

to challenge the testimony of Donner and Ward concerning their identifications of Petitioner. Specifically, Petitioner maintains that trial counsel should have impeached Ward with Detective England's deposition testimony and Donner with his own deposition testimony. Petitioner contends that Detective England stated in his deposition testimony that before identifying Petitioner, Ward identified with an 85 percent degree of certainty another individual, George S. Williams, as the person with whom she last saw the victim. On cross-examination Ward indicated that she could not remember identifying George S. Williams as the individual with whom she saw the victim on the day of her disappearance. *See* App. A-6 at 1046. However, defense counsel did not attempt to refresh Ward's recollection or call Detective England to testify to the inconsistent identification. It appears that defense counsel's failure to utilize the prior inconsistent identification constituted deficient performance under *Strickland*.

However, Petitioner has not established that he was prejudiced by counsel's failure to refresh Ward's recollection or to impeach her identification. The jury heard defense counsel question Ward regarding her identification of Williams and heard her state that she could not recall. Furthermore, on cross-examination Detective Nazarchuck indicated that although Ward identified Petitioner, she was not certain of the identification. *See* App. A-6 at 1072. Moreover, both Zaffis and Donner identified Petitioner as the suspect. *See* App. A-6 at 1076, 1087; App. A-7 at 1154, 1157. Additionally, other evidence from which the jury could have found Petitioner guilty was admitted at trial, including the diamond evidence, Petitioner's telephone number in the

---

[11](...continued)
that these claims are procedurally barred. *See* Doc. No. 30 at 60-63. Furthermore, Respondents appear to assert that these claims should be denied under § 2254(d). However, there was no adjudication on the merits as to these claims.

-32-

victim's notebook, and the burning of Petitioner's vehicle shortly after news of the victim's disappearance broke.  Accordingly, Petitioner has failed to establish that he was prejudiced by trial counsel's failure to refresh Ward's recollection or to impeach her identification of Petitioner.[12]

Next,  Petitioner contends that trial counsel was ineffective for failing to object to the trial court's use of extra-record material to rule on the motions to suppress hypnotically-induced identifications.  Based on the record from the postconviction hearing, it appears that the trial court considered extra-record material when deciding whether Zaffis, Donner, and Ward were hypnotized.  Therefore, assuming that defense counsel knew of the trial judge's consideration of this evidence, counsel's performance was arguably deficient for failing to object.  However, even assuming that defense counsel's performance was deficient, Petitioner has not established that he was prejudiced.  As noted previously, a hearing was conducted on the motions to suppress the identifications of Petitioner made by Zaffis, Donner, and Ward at which sufficient evidence was admitted from which a finding could be made  pursuant to *Stokes* that the witnesses were not hypnotized.  More importantly, however, the Florida Supreme Court ruled that "*[t]he record …* supports the judge's conclusion" that the witnesses were not hypnotized as defined in *Stokes*. *Vining*, 637 So. 2d at 926.  Thus, the Florida Supreme Court made a finding from the record that the witnesses were not hypnotized.  Moreover, as noted previously, evidence other than the identifications made by Zaffis, Donner, and Ward was presented at trial from which the jury could have found Petitioner guilty.  Accordingly, Petitioner has not established that he was prejudiced

_____

[12]As to the contention that trial counsel was ineffective for failing to impeach Donner with his deposition testimony, the Court was unable to find any inconsistencies between Donner's trial testimony and his deposition testimony.  Thus, this claim is without merit.

by counsel's failure to object to the trial court's consideration of extra-judicial material related to hypnosis.

Finally, Petitioner asserts that trial counsel was ineffective for failing to present expert testimony regarding the relax and recall testimony and for failing to raise the relax and recall sessions[13] on cross-examination.  As to the allegation that counsel was ineffective for failing to call an expert to testify regarding the relax and recall sessions, Petitioner has failed to provide any evidence substantiating what testimony an expert witness either could or would have offered.  *See Daniels*, 2006 WL 2620143, at *10 ("[T]o successfully assert that trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony.").  Thus, this claim is denied.

As to Petitioner's claim that counsel was ineffective for failing to cross-examine the witnesses regarding the relax and recall sessions, the Court finds that Petitioner has not established that he was prejudiced by counsel's failure to do so.  From the Court's review of the record, the witnesses' descriptions after the relax and recall sessions were consistent with the descriptions given before the sessions.  As in her statements to the police both before and after the relax and recall session, Ward testified that Petitioner used an inhaler; wore glasses; had thinning, light brown hair; was approximately 5'11" in height; was in his fifties; weighed approximately one-hundred and eighty pounds; and drove a black Cadillac.  *See* App. A-6 at 1016, 1023-24; App. C-19 at State Exhs. 3, 5.  Likewise, consistent with his trial testimony, Donner indicated in both pre- and post-relax and recall statements that Petitioner was approximately sixty years old; was

_____

[13]The relax and recall sessions are also referred to by Petitioner as the hypnosis sessions.

approximately 5'11"; weighed approximately two hundred pounds; and wore glasses with plastic rims. *See* App. A-7 at 1154, 1157; App. C-19 at State's Exhs. 6 and 7.  Furthermore, the jury heard sufficient evidence of Petitioner's guilt other than the identifications by these witnesses. Petitioner has not established that he was prejudiced by counsel's failure to cross-examine the witnesses regarding the relax and recall sessions.

Finally, to the extent Petitioner's claim is that the state postconviction court erred in the Rule 3.850 proceedings by not having an evidentiary hearing on these claims, this claim is not reviewable in a federal habeas proceeding.  "A habeas petition must allege that the petitioner's detention violates the constitution, a federal statute, or a treaty. . . .  [A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir.), *cert. denied*, 493 U.S. 1012 (1989).  In *Spradley v. Dugger*, 825 F.2d 1566 (11th Cir. 1987), the petitioner argued that the state trial court violated his due process rights when it denied his Rule 3.850 motion because it did not conduct an evidentiary hearing and because its opinion denying relief failed to attach those portions of the record on which it relied.  The Eleventh Circuit Court of Appeals held that the state trial court's alleged errors in the Rule 3.850 proceedings did not undermine the validity of the petitioner's conviction; therefore, the claim went to issues unrelated to the cause of the petitioner's detention, and it did not state a basis for habeas relief.  *Id.* at 1567; *see also Mitchell v. Wyrick*, 727 F.2d 773, 774 (8th Cir.) ("Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself.") (quotation and

citation omitted), *cert. denied*, 469 U.S. 823 (1984).[14]  For all the foregoing reasons, this claim

must be denied.

### F.      Claim Six - Ineffective Assistance of Counsel in Penalty Phase

Petitioner asserts that trial counsel rendered ineffective assistance of counsel during the

penalty phase of the proceedings.  In support of this claim, Petitioner maintains that trial counsel

failed to investigate and present statutory and nonstatutory mental health mitigating evidence.

Petitioner further asserts that trial counsel failed to present mitigation evidence showing that

Petitioner's mother was an alcoholic, Petitioner was a good student and son,  Petitioner saved his

ex-wife's life, and Petitioner was an alcoholic.[15]  Finally, Petitioner asserts that trial counsel failed

to adequately investigate and present evidence concerning Petitioner's Georgia conviction, thereby

depriving the jury of an accurate picture of the Georgia offense.

Petitioner raised all of these claims in his Rule 3.850 motion.  As to the ineffective

assistance based on counsel's failure to investigate and present statutory and nonstatutory mental

health mitigating evidence, the Florida Supreme Court determined that the claim was insufficiently

pled.  *Vining*, 827 So. 2d at 212.  The state court reasoned:

> In his amended motion to the lower court, Vining also asserted that counsel
> "unreasonably failed to present . . . other mitigating evidence, including statutory
> and nonstatutory mental health mitigating evidence."   The motion offered no

---

[14]In *David v. Price*, No. CIV. A. 97-7643, 1998 WL 404546, at *2 (E.D. Pa. July 15, 1998), the district court noted that "the majority of Circuits have held that . . . deficiencies [or errors in state post-conviction proceedings] are not reviewable in federal habeas proceedings."  The district court also listed those circuits in the majority and the one circuit in the minority.

[15]Petitioner also asserts that trial counsel rendered ineffective assistance by failing to ensure his presence at critical stages of the penalty phase proceedings.  This claim is addressed *infra* in claim seven.

further explanation of the purported mental health evidence that counsel failed to present. At the *Huff* hearing, Vining's counsel never mentioned any mental health mitigating evidence. Postconviction counsel instead focused almost entirely on trial counsel's failure to object to the trial judge's reliance on extra-record material (the *Gardner* issue discussed above). Postconviction counsel argued that trial counsel failed to present adequate evidence of the suggested mitigating circumstances rejected by the trial judge. After the postconviction court granted an evidentiary hearing only on the penalty phase aspects of the *Gardner* claim of ineffective assistance, Vining filed a motion for rehearing, arguing that he was entitled to an evidentiary hearing on his entire claim that counsel rendered ineffective assistance in presenting mitigating evidence during the penalty phase proceedings. In this motion for rehearing, Vining for the first time made factual allegations relating to his claim that counsel was ineffective in investigating and presenting mental health mitigating evidence. Vining attached a report from a clinical neuropsychologist stating an opinion that Vining suffers from hypomania, is bipolar, and has brain damage from his alcohol consumption.

The lower court denied Vining's motion for rehearing, and its order denying postconviction relief does not specifically address the mental health mitigating evidence. However, we conclude that this aspect of the claim was insufficiently pled in Vining's December 1996 motion for postconviction relief and thus the lower court properly denied relief. *See Arbelaez v. State*, 775 So. 2d 909, 915 (Fla. 2000) ("Where a motion lacks sufficient factual allegations, or where alleged facts do not render the judgment vulnerable to collateral attack, the motion may be summarily denied."); *see also Ragsdale v. State*, 720 So. 2d 203, 207 (Fla. 1998).

Only after the lower court denied an evidentiary hearing on the mitigating evidence claim did Vining make any mention of the neuropsychologist's report. A defendant may not raise claims of ineffective assistance of counsel on a piecemeal basis by refining his or her claims to include additional factual allegations after the postconviction court concludes that no evidentiary hearing is required. *Cf. Pope v. State*, 702 So. 2d 221, 223 (Fla. 1997) (stating that a defendant may not raise claims of ineffective assistance of counsel on a piecemeal basis by filing successive motions). Rule 3.850 specifically prohibits successive motions unless "the facts on which the claim is predicated were unknown by the movant or the movant's attorney and could not be ascertained by the exercise of due diligence." Clearly, the claim of ineffective presentation of mental health evidence was encompassed in Vining's broader mitigating evidence claim and should have been fully pled at the time he filed the claim. Where a previous motion for postconviction relief has raised a claim of ineffective assistance of counsel, the postconviction court may summarily deny a successive motion which raises an additional ground for ineffective assistance of counsel. *See Pope*, 702 So. 2d at 223. This applies equally where a defendant raises additional claims in a motion for rehearing. *See*

> Fla. R. App. P. 9.330(a) ("A motion for rehearing ... shall not present issues not previously raised in the proceeding.").

*Id.* at 212-13.

The Florida Supreme Court determined that this claim was insufficiently pled and therefore properly denied. Similarly, in the instant case, Petitioner failed to provide any evidence substantiating what testimony an expert witness either could or would have offered. *See Daniels*, 2006 WL 2620143, at *10 (M.D. Fla. 2006). Thus, Petitioner's conclusory allegation that trial counsel should have investigated and presented an expert witness to testify about mental health evidence does not support a finding of ineffective assistance of counsel. Accordingly, this claim is denied.[16]

Petitioner next asserts that trial counsel was ineffective for failing to present mitigation evidence showing that Petitioner's mother was an alcoholic, Petitioner was a good student and son, Petitioner saved his ex-wife's life, and Petitioner was an alcoholic. In denying this claim, the Florida Supreme Court noted that the record refuted this claim as "the jury heard testimony from six of [Petitioner's] relatives, who discussed his alcohol consumption and family history." *Vining*, 827 So. 2d at 211-12.

Petitioner has not shown that the state court's determination was contrary to, or an unreasonable application of, federal law. In fact, the record clearly refutes this claim. At the sentencing hearing, trial counsel presented evidence regarding Petitioner's alcohol use, his mother's alcohol use, his stuttering, his college education, his work in the community, and that he

---

[16]The Court notes that this claim appears to be procedurally barred based on the state court's determination. However, Respondents do not assert that it is procedurally barred.

saved his ex-wife's life.  *See* App. A-14 at 2010-14, 2015-31, 2043-44.  This claim, therefore, is

denied pursuant to § 2254(d).

Petitioner finally asserts that counsel was ineffective for failing to adequately investigate

and present evidence concerning Petitioner's Georgia conviction.  The Florida Supreme Court

denied relief, finding:

> As to the claim that counsel rendered ineffective assistance with regard to the
> penalty phase witnesses who testified about a prior Georgia incident,[] the
> postconviction court concluded that Vining failed to demonstrate prejudice from
> any failure in this regard.  Gail Flemming, the victim of the Georgia incident,
> testified about her abduction, how Vining and his accomplice terrorized her,
> threatened to murder her, took her to a vertical grave in the woods, and proceeded
> with the murder plan until the police arrived and rescued her.  A Georgia police
> officer testified about the incident and Vining's involvement.  Trial counsel
> objected to the testimony of these witnesses, effectively limited their testimony on
> certain aspects of the incident through objection, and also moved for mistrial based
> on their testimony.  Thus, trial counsel cannot be deemed ineffective on this issue.

*Vining*, 827 So. 2d at 213.

The record supports the state court's determination.  Trial counsel objected to much of the

testimony regarding the Georgia conviction and moved for a mistrial based on the testimony.  *See*

App. A-14 at 1985-90, 2006-08.  Petitioner has failed to establish that the state court's ruling is

contrary to, or an unreasonable application of, federal law.  Thus, this claim is denied pursuant to

§ 2254(d).

### G.     Claim Seven - Involuntary Absence During Critical Stages

Petitioner contends that he was involuntarily absent during critical stages of the trial

resulting in his conviction and sentence of death.  Specifically, Petitioner asserts that he was

involuntarily absent from the pretrial hearings on a motion to suppress hypnotically-tainted

evidence, a motion in limine regarding *Williams*[17] Rule evidence, a motion to discharge based on the IAD, and a motion to prohibit in-court identification by witnesses whose memories were hypnotically refreshed.  Petitioner further argues that he was involuntarily absent during the guilt phase when the jury submitted a question to the trial court and during the sixteen bench conferences conducted during the penalty phase.  Finally, Petitioner asserts that trial counsel rendered ineffective assistance by failing to ensure Petitioner was present at these hearings and conferences.

Petitioner raised both portions of this claim in his Rule 3.850 motion.  The Florida Supreme Court determined that the substantive portion of the claim was procedurally barred because it should have been raised at trial or on direct appeal.  *See Vining*, 827 So. 2d at 217.  The state court denied relief on the ineffective assistance portion of this claim, ruling that Petitioner did not establish that he was prejudiced by counsel's failure to object to his absence at the pretrial and pre-penalty phase proceedings.  *Id.*  The state court noted that Petitioner had not asserted "how he could have made a made a meaningful contribution to counsel's legal arguments during [the] preliminary proceedings."  *Id.*  With respect to Petitioner's absence from the penalty phase bench conferences, the state court determined that the law in Florida at the time of his trial did not require the defendant's presence at bench hearings and Petitioner had not demonstrated any prejudice from his absence.  *Id.*  As to Petitioner's absence when the jury asked the judge a question during the guilt phase deliberations, the Florida Supreme Court found that "both defense counsel and the prosecutor were present when the trial judge responded 'no' to the jurors' question of whether they

---

[17]*Williams v. State*, 110 So. 2d 654 (Fla. 1959).

should decide on an advisory sentence if they should agree on a verdict of first-degree murder."
*Id.*  The state court reasoned that because this was the appropriate response, any error resulting from Petitioner's absence was harmless.  *Id.*  The Florida Supreme Court concluded its analysis by noting that Petitioner failed to establish prejudice pursuant to *Strickland.  Id.*

As stated previously, the state courts determined that the substantive portion of this claim was procedurally barred because it was not raised on direct appeal.  Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default.  Likewise, Petitioner has not shown the applicability of the actual innocence exception.  A review of the record reveals that the Petitioner is unable to satisfy either of the exceptions to the procedural default bar.  Therefore, the substantive portion of this claim is procedurally barred.

With respect to the ineffective assistance of counsel portion of the claim, the state courts applied *Strickland* and determined that Petitioner had not established any prejudice.  Petitioner has not established that the state courts' application of *Strickland* was objectively unreasonable.  The record supports the state courts' determination.  Accordingly, this claim is denied pursuant to 28 U.S.C. § 2254(d).

### H.    Claim Eight - Unconstitutional Aggravators

Petitioner argues that the aggravators found to support his sentence of death are unconstitutional as applied and on their face.  Specifically, Petitioner asserts that (1) the automatic aggravator; (2) the cold, calculated and premeditated ("CCP") aggravator; (3) the prior violent felony aggravator; and (4) the under sentence of imprisonment aggravator were either unconstitutional or their use in the instant case was unconstitutional.  Petitioner further asserts that

-41-

his death sentence violates *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Lockett v. Ohio*, 438 U.S. 586 (1978).

1.      *Automatic Aggravator*

Petitioner  maintains that the "automatic aggravator" – that the murder was committed while he was engaged in the commission of the crime of robbery – is unconstitutional because the use of the underlying robbery as a basis for an aggravating factor renders that aggravator illusory. Petitioner further maintains that trial counsel was ineffective for failing to object to the aggravator.

Petitioner raised this claim in his Rule 3.850 motion, and he further asserted that counsel was ineffective for failing to raise the issue.  The state postconviction court denied relief, concluding that the substantive claim was procedurally barred because it should have been raised on appeal and it was otherwise without merit.  *See* App. C-17 at 2505.  The state court further determined that trial counsel did not render ineffective assistance by failing to object to the aggravator because the argument was without merit.  *Id.*  The Florida Supreme Court affirmed the postconviction court's determinations.  *See Vining*, 827 So. 2d at 213.

The state courts determined that the substantive portion of this claim was procedurally barred and otherwise without merit.  Although the trial court also addressed the merits of the claim, the claim still is procedurally barred.  *See Alderman*, 22 F.3d at 1549 ("[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim.").  Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default.  Likewise, Petitioner has not shown the applicability of the actual innocence exception.  A review of the record reveals that the Petitioner is unable to satisfy either

of the exceptions to the procedural default bar.  Therefore, the substantive portion of this claim is procedurally barred.

Moreover, the substantive portion of the claim is meritless.  The Florida Supreme Court has repeatedly held that the use of underlying felonies committed by defendant as an aggravating circumstance in the penalty phase of a prosecution for first-degree murder is not unconstitutional. *See Squires v. State*, 450 So. 2d 208, 212 (Fla.), *cert. denied*, 469 U.S. 892 (1984).  Petitioner has not established that this holding is contrary to any United States Supreme Court precedent.  Moreover, the state courts' determination that trial counsel did not render deficient performance by failing to raise a non-meritorious issue is likewise neither contrary to nor an unreasonable application of federal law.  Accordingly, this claim is procedurally barred and meritless.

2.      *CCP Aggravator*

Petitioner asserts that the CCP aggravator was unconstitutional.  In support, Petitioner contends that the jury instruction regarding premeditation was insufficient as recognized by the Florida Supreme Court, which struck the CCP aggravator on direct appeal.  Petitioner maintains that the statute which defines the CCP aggravator is facially vague and overbroad.  Finally, Petitioner contends that trial counsel was ineffective for failing to object to the CCP aggravator.

On direct appeal, Petitioner asserted that the trial court erred in finding and instructing the jury on the CCP aggravator because the evidence was insufficient to support the application of the factor.[18]  *See* App. A-28 at 74.  The Florida Supreme Court agreed, finding that there was insufficient evidence of heightened premeditation to kill.  *See Vining*, 637 So. 2d at 928.  In his

---

[18]Petitioner did not assert that the CCP aggravator was unconstitutional nor did the Florida Supreme Court address this issue when it struck the CCP aggravator.

Rule 3.850 motion, Petitioner raised the claim that the CCP aggravator was unconstitutionally vague and that counsel was ineffective for raising the issue. *See* App. C-13 at 1684. The Florida Supreme Court determined that the substantive claim was procedurally barred because it should have been raised on direct appeal and trial counsel was not ineffective for raising the issue because the claim was not meritorious. *See Vining*, 827 So. 2d at 214.

The state court determined that the substantive portion of this claim was procedurally barred. Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default. Likewise, Petitioner has not shown the applicability of the actual innocence exception. A review of the record reveals that the Petitioner is unable to satisfy either of the exceptions to the procedural default bar.

As to whether counsel was ineffective for failing to object to the CCP aggravator as unconstitutionally vague, the Court concludes that the state court's determination that counsel was not ineffective is neither objectively unreasonable, nor an unreasonable application of, federal law. At the time of Petitioner's trial and when his initial appeal brief was filed, the Florida Supreme Court had rejected the argument that the CCP aggravator was unconstitutionally vague. *See Brown v. State*, 565 So. 2d 304 (Fla. 1990), *abrogated by* Jackson v. State, 648 So. 2d 85 (Fla. 1994). Counsel is not required to anticipate future developments in the law. *Parker v. North Carolina*, 397 U.S. 790, 797-99 (1970); *Davis v. Wainwright*, 547 F.2d 261 (5th Cir. 1977). Thus, trial counsel cannot be deemed ineffective for failing to object to the CCP aggravator as unconstitutional. Moreover, appellate counsel cannot be deemed ineffective for failing to raise the issue on appeal. Trial counsel did not object to the constitutionality of the CCP aggravator. Because no objection was made at trial, the issue was not preserved for review on appeal. *Clark*

*v. State*, 363 So. 2d 331, 333 (Fla. 1978) ("[E]ven constitutional errors, other than those constituting fundamental error, are waived unless timely raised in the trial court."), *overruled in part, State v. DiGuilio*, 491 So. 2d 1129 (Fla. 1986).  Accordingly, the substantive portion of this claim is procedurally barred and the ineffective assistance of counsel portion of the claim is denied pursuant to § 2254(d).

      3.     *Prior Violent Felony Aggravator*

      Petitioner asserts that the trial court improperly relied on Petitioner's prior convictions in Georgia and South Carolina in sentencing him.  Petitioner maintains that his Georgia and South Carolina convictions were obtained in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  Petitioner further asserts that trial and appellate counsel were ineffective for failing to raise this issue.

      Petitioner raised this claim in his Rule 3.850 motion, and the state postconviction court determined that Petitioner abandoned this claim at the *Huff* hearing.  *See* App. C-17 at 2503.  The Florida Supreme Court affirmed, finding that the claim was insufficiently pled.  *See Vining*, 827 So. 2d at 214.

      The record indicates that this claim was stricken after collateral counsel informed the state postconviction trial court that it could not proceed on the claim.  *See* App. C-1 at 101-02.  Thus, this claim was not exhausted in the state courts and appears to be procedurally barred.  Petitioner has not shown either cause or prejudice that would excuse the default.  Likewise, Petitioner has not shown the applicability of the actual innocence exception.  A review of the record reveals that the Petitioner is unable to satisfy either of the exceptions to the procedural default bar.  Accordingly, this claim is procedurally barred.

4.      *Under Sentence of Imprisonment Aggravator*

Petitioner asserts that the trial court failed to instruct the jury that the under sentence of imprisonment when the offense was committed aggravator was entitled to less weight if the defendant had not committed the offenses after escaping from confinement.   In support of this claim, Petitioner maintains that he was on parole at the time of the offenses.  Petitioner contends that trial counsel failed to request a limiting instruction or object to the instruction.

Petitioner raised this claim in his Rule 3.850 motion, and the state postconviction court found that the claim was procedurally barred and otherwise without merit.  *See* App. C-17 at 2492. The state postconviction court further determined that counsel was not ineffective for failing to object or raise this claim because the jury instruction was proper.  *Id.*  The Florida Supreme Court affirmed.  *See Vining*, 827 So. 2d at 214-15.

The state court determined that the substantive portion of this claim was procedurally barred.  Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default.  Likewise, Petitioner has not shown the applicability of the actual innocence exception. The record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar.

As to whether counsel was ineffective for failing to object to the under sentence of imprisonment aggravator or request a limiting instruction, the Court concludes that the state court's determination that counsel was not ineffective is neither contrary to, nor an unreasonable application of, federal law.  As noted by the state courts, failure to object to a standard jury instruction, which has not been invalidated, does not render counsel's performance deficient.

Accordingly, the substantive portion of this claim is procedurally barred and the ineffective assistance of counsel portion of the claim is denied pursuant to § 2254(d).

    5.    *Lockett* and *Eddings*

    Petitioner asserts that his death sentence violates *Lockett*[19] and *Eddings*[20] because the trial court rejected nonstatutory mitigating evidence relating to his alcohol use and family background. Petitioner asserts that trial counsel was ineffective for failing to object to the trial court's reliance on extra-judicial information which contradicted this nonstatutory mitigation evidence.

    Petitioner raised the substantive portion of this claim on direct appeal and in his Rule 3.850 motion.  He raised the ineffective assistance of counsel portion of this claim in his Rule 3.850 motion.  On direct appeal, the Florida Supreme Court determined that the record supported the trial court's determination that this nonstatutory mitigation evidence had not been established or could not be considered of a mitigating nature.  *See Vining*, 637 So. 2d at 928.  With respect to the ineffective assistance of counsel claim, the Florida Supreme Court determined that trial counsel offered evidence related to nine mitigating factors, which included evidence that he was a good father and had a history of alcohol use.  *See Vining*, 827 So. 2d at 214.  The court concluded that given the evidence presented by trial counsel, Petitioner had not established that trial counsel was deficient or that counsel was responsible for the trial court's determination that this evidence was

---

    [19]*Lockett* holds that the sentencer may not be precluded from considering as a mitigating factor any part of the defendant's character or record and any of the circumstances of the offense which the defendant offers as a basis for a lesser sentence.  *Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978),

    [20]*Eddings v. Oklahoma*, 455 U.S. 104 (1982) (holding that refusal to consider mitigation evidence violated *Lockett*).

not mitigating in nature.  *Id.*  The Florida Supreme Court determined that Petitioner had not met the requirements of *Strickland*.  *Id.*

To the extent Petitioner is arguing that the trial court relied on extra-judicial information when rejecting this mitigation evidence and that counsel was ineffective for failing to object to the trial court's use of extra-judicial information, this claim was addressed *supra*.  To the extent this claim has not previously been addressed, Petitioner has not established that the state court's determination was either objectively unreasonable, or contrary to federal law.  Accordingly, this claim is denied.

I.      **Claim Nine - Florida's Unconstitutional Death Penalty Scheme**

Petitioner asserts that Florida's death penalty scheme is unconstitutional on its face and as applied to him.  In support of this claim, Petitioner maintains that execution by electrocution or lethal injection is cruel and unusual punishment.

Petitioner raised this claim in his Rule 3.850 motion.  *See* App. C-13 at 1702.  The state postconviction court determined that the claim was procedurally barred as it was not raised on direct appeal.  *See* App. C-17 at 2500.  The state court further noted that the claim was without merit.  *Id.* at 2500-01.  The Florida Supreme Court affirmed concluding that the claim was without merit.  *See Vining*, 827 So. 2d at 215.

"[F]ederal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law.  In addition, the federal courts may not address claims that have not been presented in the state court if the state court would have found the claims to be procedurally defaulted . . . ."  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).  Moreover, if

the petitioner attempts to raise the claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman*, 22 F.3d at 1549.

In the instant case, the state courts determined that this claim was procedurally barred and otherwise without merit. Although the trial court also addressed the merits of the claim, the claim still is procedurally barred. *See id.* ("[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim."). Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default. Likewise, Petitioner has not shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, claim nine is procedurally barred.[21]

### J.    Claim Ten - Innocent of Death Penalty

Petitioner asserts that he is actually innocent of the death penalty because the aggravators relied upon are unconstitutional and insufficient to establish death eligibility. In support of this claim, Petitioner relies on the arguments raised in claim eight.

Petitioner raised this claim in his Rule 3.850 motion, and the state courts denied relief. *See Vining*, 827 So. 2d at 215-16. The Florida Supreme Court reasoned that the remaining aggravating circumstances – committed during a robbery, under sentence of imprisonment, and previous

---

[21]The Court further notes that the claim is otherwise without merit. *See In re Kemmler*, 136 U.S. 436 (1890) (holding that state statute authorizing death by electrocution is constitutional); *see also Sims v. State*, 754 So. 2d 657 (Fla.) (denying claim that Florida statute authorizing death by lethal injection is unconstitutional), *cert. denied,* 528 U.S. 1183 (2000).

violent felony conviction – were supported by the record.   The court noted that "[i]n order to prevail on a claim of being innocent of or ineligible for the death sentence he received, a defendant 'would have to show constitutional error invalidating all of the aggravating circumstances upon which the sentence was based.'" *Id.* at 216 (quoting *In re Medina*, 109 F.3d 1556, 1566 (11th Cir. 1997)). The state court concluded that Petitioner failed to make such a showing.  *Id.*

In light of the denial of the arguments raised in claim eight, the Court finds that Petitioner has not established that the state courts' determination is either contrary to, or an unreasonable application of, federal law.  Accordingly, this claim is denied.

### K.      Claim Eleven - Inability to Interview Jurors

Petitioner asserts that Florida's Rules of Professional Conduct which prohibit trial counsel from contacting jurors about the trial violates his First, Sixth, Eighth, and Fourteenth Amendment rights.

Petitioner raised this claim in his Rule 3.850 motion, and the state postconviction court denied relief.  *See* App. C-17 at 2499-2500.  The Florida Supreme Court affirmed, finding that the claim was procedurally barred because it was not raised on direct appeal and was otherwise without merit.  *See Vining*, 827 So. 2d at 216.

The state court found this claim to be procedurally barred. Although the trial court also addressed the merits of the claim, the procedural bar still applies.  *See Alderman*, 22 F.3d at 1549. Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default. Likewise, Petitioner has not shown the applicability of the actual innocence exception.  A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar.  Therefore, claim eleven is procedurally barred.

L.       **Claim Twelve - Prosecutorial Misconduct**

Petitioner asserts that the prosecution engaged in misconduct during the penalty phase of the trial.  In support of his claim, Petitioner maintains that the prosecution presented irrelevant and inflammatory evidence regarding his prior conviction in Georgia and argued the evidence during closing argument.  Petitioner notes that defense counsel repeatedly objected to the admission of testimony related to the Georgia conviction; however, the trial judge overruled the defense's objections.

Petitioner raised this claim on direct appeal and in his Rule 3.850 motion.  The Florida Supreme Court denied relief on direct appeal finding that "much of the prosecutor's argument that [Petitioner] labels as impermissible consisted of explaining the nature of the statutory aggravating factors and the weight the jury should accord each of them.  Other comments did not taint the jury's recommendation of death." *Vining*, 827 So. 2d 927.  On appeal from the denial of the 3.850 motion, the Florida Supreme Court further determined that to the extent Petitioner raised a different claim than the prosecution's argument concerning the Georgia conviction, such a claim was procedurally barred because it should have been raised on direct appeal.  *See Vining*, 827 So. 2d at 218.

Upon review of the record, this Court finds that Petitioner has not established that the state courts' determination was either contrary to, or an unreasonable application of, federal law.  The state courts found that the evidence concerning the Georgia conviction was admissible pursuant to Florida law and that the prosecution was permitted to argue that evidence in closing.  Petitioner

has not cited any federal law that is in direct contradiction to the state court's ruling.  Accordingly, this claim is denied pursuant to § 2254(d).[22]

**V.      Conclusion**

This Court finds that the claims alleged by Petitioner are without merit and must be denied with prejudice.

Any of Petitioner's allegations not specifically addressed herein are determined to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Amended Petition for Writ of Habeas Corpus filed by John B. Vining  (Doc. No. 17) is **DENIED**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on this 15th day of October, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[22]To the extent Petitioner raises arguments in this claim that were not raised on direct appeal, the claim is not exhausted.  Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default.  Likewise, Petitioner has not shown the applicability of the actual innocence exception.  A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar.  Therefore, those portions of the claim are procedurally barred.